Exhibit 3: ADA Coordinator Training (Oct. 2020)

# Kentucky Department of Corrections



**ADA Coordinator Training**

The Americans with Disabilities Act

AND

Federal Deaf/Hard of Hearing Settlement Agreement

(October 25, 2020)

# Training Overview (1)

This training begins with a very general overview of the Americans with Disabilities Act itself.

Then it turns to the 2015 federal Settlement Agreement governing treatment of deaf and hard-of-hearing inmates. The case is formally titled <u>Knights & Adams v. Commonwealth of Kentucky</u>, 3:14-cv-00001-GFVT (Eastern District of Kentucky). It is before Judge Gregory F. Van Tatenhove.

This training will introduce and review some main points of the Settlement Agreement.  It does not cover every aspect of the Agreement.

For more information, read the Agreement itself, the summary of it, and the Settlement Monitor's Compliance Reports and Recommendations – all are in the KDOC G-drive folder called "ADA."

# The Americans with Disabilities Act



3

# ADA Requirements

- Non-discrimination
  - Including reasonable modification to polices and practices
- Effective communication
  - Including auxiliary aids and services

# Non-discrimination

APPLIES TO ALL INMATES WITH DISABILITIES (not just deaf/HOH)

Current policy: The KYDOC will ensure that deaf and hard of hearing inmates have full and equal access to and enjoyment of all services, privileges, facilities, advantages, and accommodations available to similarly situated non-deaf inmates. The KYDOC shall provide deaf and hard of hearing inmates with access to services, privileges, facilities, advantages, and accommodations substantially equivalent to those offered to similarly situated non-deaf inmates.

# Potential violations of the non-discrimination rule

- **Discrimination plain and simple**: Barring inmate with a disability from a program, service, activity.
- **Accommodation/modification failure**: Declining to offer reasonable modifications to **rules, practices, or equipment** that exclude deaf/HOH inmates. E.g., Punishing deaf inmate for failure to obey an order he didn't hear; failing to offer needed captioning, non-auditory telecommunications devices, etc.
- **Direct Threat Error**: Barring deaf/HOH inmates from particular jobs or other opportunities on the basis of assumed risk, without considering their individual circumstances and whether the risk is (a) applicable to the individual inmate, and (b) unable to be mitigated by an accommodation or modification of some kind.
- **Isolation/segregation**:
  - Insisting that deaf/HOH inmates live in special housing, when their needs can be accommodated elsewhere.
  - Barring deaf/HOH inmates who *do* live in special housing from various privileges or opportunities.

6

# Effective communication

(Applies to all inmates with communications-related disabilities; deaf/HOH, blind/low vision, etc.)

**Current policy: KYDOC will communicate effectively with deaf and hard-of-hearing inmates**—ensuring that inmates can receive information from and provide information to staff.

Effective communication *may* require auxiliary aids/services (e.g., interpretation, amplication). Or it may require other interventions—holding conversations or program in quiet spaces, dampening noisy machinery, using clear masks, etc.

# ALL Deaf/HOH inmates are covered by effective communication requirement

- Inmates who use sign language:
  - Must provide live or remote interpretation when useful

- Inmates who do *not* use sign language:
  - Amplification
  - Oral communications strategies
  - Non-auditory strategies

- Remember: Many inmates have low literacy! So written communication is often *not* effective communication.

8

# Potential violations of the effective communication rule

- Failing to provide remote or in-person interpretation.  Using inmates to interpret other inmates.

- Failure to provide amplification when needed.

- Using only auditory alerts for count, pill call, etc.

- Wearing an opaque mask while talking to inmates who lip-read, in whole or in part.

- Talking to HOH inmates from behind.

9

# Settlement agreement

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT FRANKFORT**

Eastern District of Kentucky
**F I L E D**

MICHAEL KNIGHTS AND OSCAR ADAMS, )
    on behalf of themselves and )
    all others similarly situated, )

JUN 2 4 2015

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

    **Plaintiffs** )

    **v.** )   Case No.: 3:14-cv-00001-GFVT

**COMMONWEALTH OF KENTUCKY, et al.** )

    **Defendants.** )

**CONSENT JUDGMENT**

10

# Settlement Overview

The settlement covers many topics, including:

1. Hearing assessment
2. Audiology services
3. Auxiliary aids assessment
4. Informing inmates
5. Educating staff
6. Auxiliary aids/services, in general
7. Interpretation
8. Other accommodations

# Training Overview

- For each category, this training describes:

    a) Requirements

    b) Role of the ADA Coordinator

    c) Effective communications issues

    d) Outcomes

- I focus on the aspects of the settlement that align with the ADA itself. That means not much should change when the settlement expires—except the lifting of reporting to me, and court oversight via my reports.

12

# Post-Settlement Changes

The settlement will expire at the end of calendar 2020. At the end of the training, we'll talk about post-settlement changes.

# 1. Hearing Assessment:
# a) Requirements

Medical staff should assess all persons who may be deaf or hard-of-hearing during initial intake, and also in routine (bi)annual physicals.

- All inmates receive hearing screening, administered by medical staff.

- If the screen indicates a hearing problem, a medical examination by a provider occurs in the next few days, followed up as necessary by specialist evaluation/services.

- The process is designed to *both* identify deaf and hard-of-hearing inmates, and to provide them necessary audiology and other care/services.

14

# 1. Hearing Assessment:
# b) Role of the ADA Coordinator

1.  Ensure medical staff are properly trained about the settlement's requirements.

    - Medical staff conduct hearing assessments, but YOU are responsible for making sure everything that needs to happen does happen.

2.  Oversee and track screening and followup processes

    - Track whether the hearing assessments are occurring as they should be, and whether the outcomes are being recorded/followed up appropriately.

    - Oversee the process and identify problems. Ex., if a deaf inmate is not identified in the screening, why wasn't he?

3. Track deaf/hard-of-hearing inmates, and report names etc. to the settlement monitor

4. Assess how the process can be improved, and fix it.

# 1. Hearing Assessment:
# c) Effective Communication

Medical staff must:

- Ask questions about hearing early in the process. Provide accommodations, if needed, for the rest of the medical screening.

- Ask inmates with hearing difficulties whether they use sign language to communicate.

- Offer, without request, interpretation services to inmates who use sign language to communicate.
  - Be able to readily access VRI laptops and know how to use them.

- Have pocket amplifiers on hand and available to use if needed.

16

# 1. Hearing Assessment:
# d) Outcomes

For all inmates who are deaf or hard-of-hearing

- Alerts placed in KOMS and EMR that are immediately obvious when the inmate's file is opened.

- Notice provided to ADA Coordinator so non-medical followups can be done.

- Medical followups are started and tracked.

- Identification card provided to inmate.

# 2. Audiology Services:
# a) Requirements

- Inmates who need hearing aids should be provided them promptly.

  – 60 days from first request to provision of hearing aids is reasonable.  If it takes longer, without good cause for the delay, that is a problem.

- Batteries should be readily available, without copay.

# 2. Audiology services:
# b) Role of the ADA Coordinator

Medical staff must evaluate/coordinate care for inmates in need of audiology services.  But it's the ADA Coordinator's job to

- Monitor/track progress

- Problem solve

- Report to the Settlement Monitor

# 2. Audiology Services:
# c) Effective Communication

Ensure that inmates are told, effectively, that if they want a hearing aid, they need to request one.

# 2. Audiology Services:
# d) Outcomes

For all inmates who have requested hearing aids

- Progress is tracked weekly.

- Obstacles to service provision are eliminated.

- Hearing aids are provided timely (within 60 days of the request)

- Tracker with full and accurate information is provided to the Settlement Monitor

# 3. Auxiliary Aids Assessment: a) Requirements

- Each institution must conduct an "auxiliary aids and services assessment" for each deaf/hard-of-hearing inmate.

- "Primary consideration" is to be given to an inmate's requests as to what sorts of accommodations they prefer.

- Covers the whole range of potential needs and accommodations.

# 3. Auxiliary Aids Assessment:
# b) Role of the ADA Coordinator

- Plan and arrange the assessment meetings

- Conduct the assessments

- Ensure that the needs revealed in the assessment are addressed with appropriate aids and accommodations.

- Evaluate the effectiveness of accommodations

23

# 3. Auxiliary Aids Assessment:
# c) Effective Communication

- This is an ***interactive meeting*** between the ADA Coordinator and the inmate.

- There must be ***effective communication during the meeting***

  – Sign language interpreters, amplifiers, or provision of written information may be necessary.

  – Because this is the meeting that allows you to determine what exactly the inmates' communication needs are, don't make assumptions before the meeting; be aware of communications difficulties and be prepared to adjust as the meeting progresses.

  – The point is not the paperwork but the substance.

24

# 3. Auxiliary Aids Assessment: d) Outcomes

- The assessment covers, and produces readily available documentation of:
  - The inmate's needs related to hearing.
  - The inmate's preferences on auxiliary aids/accommodations
  - A plan to put in place whatever services/accommodations are necessary

# 4. Informing the Inmates:
# a) Requirements

The prison must inform inmates about their rights under the ADA and the Settlement Agreement, and about available accommodations and aids.

26

# 4. Informing the Inmates:
# b) Role of the ADA Coordinator

- Share written information, and ensure that it is understood: Brochure, policy, etc.

- Arrange the processes for informing inmates; gather feedback from inmates to evaluate information effectiveness.

- When other staff are providing inmates information on available services/ accommodations, to inmates, the ADA Coordinator trains/monitors staff effectiveness.

27

# 4. Informing the Inmates:
# c) Effective Communication

- Interpreters as needed.
  - Use VRI – or, if necessary, live interpreter.
  - Check that other staff are using VRI; logs can confirm that it is being used as required.
- For non-signing inmates:
  - Remember low literacy.  Written material does not communicate effectively for someone who can't read.
  - In-person demonstrations of equipment can be helpful.

28

# 4. Informing the Inmates:
# d) Outcomes

- Including, but not limited to:
  - Each deaf/h-of-h inmate receives a written description and schedule for what aids and services are available, and (for those who sign) when interpreters are available, and how to request.

  - Each deaf/h-of-h inmate receives forms to be used request services.

  - Each deaf/h-of-h inmate receives explanation of the above, and also of ways in which programs can be made more accessible (e.g., assistive listening, tutors, etc.)

29

# 5. Educating the Staff:
# a) Requirements

- All prison staff who interact with inmates must receive training on:
  - Their obligations under the Agreement.
  - How to communicate effectively with deaf/ hard-of-hearing inmates.
- Some training is available via a computer-based-training module.
- Other training should be live and in-person. (E.g., how to use the VRI laptop).

30

# 5. Educating the Staff:
# a) Requirements (2)

Training should focus on concrete staff roles and responsibilities

E.g.: In the event a deaf or hard-of-hearing inmate is paged, staff should know to check KOMS for a hearing alert and to individually alert the inmate if he or she does not respond to the page.

31

# 5. Educating the Staff:
# b) Role of the ADA Coordinator

- Either conduct the training or make sure it is being provided regularly.
  - Ensure that all staff have received computer-based-training.
  - Offer live training as appropriate.

- Ensure the training is effective and up-to-date
  - Update training as appropriate, if new issues arise
  - If staff do not understand the training, adjust as necessary.

# 5. Educating the Staff:
# d) Outcomes

- All staff receive training

- Monitoring demonstrates when the training "takes" – when staff are and are not acting on the training provided.

- Retraining is offered as appropriate.

# 6-8. Accommodations/Auxiliary Aids/ Interpretation (Overview)

When might accommodations/auxiliary aids/ interpretation be needed?

- Certainly at formal meetings: Disciplinary hearings, classification, grievance hearings, parole board hearings

- At regular meetings as well: Classes and programs

- Any time there is staff/inmate communication, including informal conversations.

# 6. Auxiliary Aids and Services: a) Requirements

- Auxiliary aids and services necessary and appropriate must be provided to deaf/hard-of-hearing inmates. Auxiliary aids include:
  - Live or remote interpreters
  - Hearing aids
  - Assistive listening systems, amplifiers
  - Captioning
  - "TDDs" or "TTYs"
  - Captioned telephones
  - Videophone and access to telephone relays
  - Non-auditory alerts
  - Etc.

# 6. Auxiliary Aids and Services:
# b) Role of the ADA Coordinator

- Track use; make sure equipment is available for use, in good working order, and actually being used.

- Videophone/TTY/Captioned Telephones should be readily available without special request for inmates who need them for telecommunications.

- Evaluate effectiveness; regularly follow up to ensure that aids are effective. If not, adjust.

# 6. Auxiliary Aids and Services:
# c) Effective Communication

- Make sure that communication with deaf/hard-of-hearing inmates about their preferences and needs for aids and services is effective.  E.g.:

  - Use VRI interpreter to help when you are explaining services to an inmate who signs.

  - Do not rely on a written brochure to inform an inmate of aids and services if he has low literacy.

# 6. Auxiliary Aids and Services: d) Outcomes

- Auxiliary aids and services are available and in working order.

- Auxiliary aids and services are used when appropriate.

# 7. Interpreters:
# a) Requirements

- Interpreters (either in-person or through VRI) should be readily available when necessary for effective communication with inmates who use sign language.

# 7. Interpreters:
# b) Role of the ADA Coordinator

- **Consider**: which situations require in-person interpreters, and for which can VRI be effective?

- **REady**: ensure all staff who may need to use VRI or in-person interpretation know how to set that up.

- **Arrange** contract with interpretation service and VRI laptops, and ensure that laptops are updated, in good working condition, and have all necessary accessories available (e.g. splitters, chargers, instructions).

- **Track and Evaluate**: Ascertain that interpreters are being used in relevant situations. Follow up with deaf inmates and staff who use interpreters, make sure process is smooth, and adjust process to prevent any problems they report from recurring.

# 7. Interpreters:
# c) Effective Communication

- Some situations are more appropriate for in-person rather than VRI interpretation.
  - Especially when there are several people talking together (e.g., a class or group)
- VRI should be fully functional and easily accessible without in-advance arrangement, to be effective.
- VRI should *not* be reserved for special occasions. Any communication with an inmate who signs is appropriate for interpretation.

41

# 7. Interpreters:
# d) Outcomes

Interpretation services are provided (not just by policy, but in practice) for

- Medical and mental health care

- Disciplinary hearings—including *all* meetings

- Transfer and classification processes

- Rehabilitative programming (including AA and NA)

- Educational programming

- Other times

# 8. Effective Communication
# a) Requirements

The ADA requires that prison staff communicate effectively with deaf/HOH inmates. This covers:

- Announcements/alerts

- Communication during education, programming, jobs

- All other communication.

# 8. Effective  Communication
# b) Role of the ADA Coordinator

- Consider the needs of the inmates and how they might interact with various assignments/ programs.  E.g.:

  – Non-auditory alerts are important. Could be by switching on and off lights, buzzers/strobes, ADA Aids, personal notification. But need to be routine and effective.

  – Auditory alerts should be made as accessible as possible. Amplification is crucial—yelling is ineffective.

  – Amplification should be easily and routinely available across the prison, for classes, programming, religious programs, etc.

44

# 8. Effective Communication
# c) Effective Communication

- Inmates do not know what is available. This needs to be explained to them, and the explanation must be effectively communicated.

# 8. Effective Communication: d) Outcomes

- ADA Coordinator knows where all deaf / hard-of-hearing inmates are housed, and appropriate technologies/processes are tracked and provided, including in segregated housing.

- Same for education, jobs, etc.

46

# 9. Other Accommodations
# a) Requirements

Non-auxiliary aid accommodations are also required when necessary/appropriate:

- Housing assignment

- Assistance in education

- Etc.

# 9. Accommodations
# b) Role of the ADA Coordinator

- Consider the needs of the inmates and how they might interact with various assignments/ programs.  E.g.:
  - Deaf inmates may need to be in a housing area with easy access to the videophone.
  - A hard-of-hearing inmate may do better in a quieter unit, or closer to the loudspeaker, or to staff (so they can alert him in-person when necessary)
  - Track housing assignments; if an inmate is moved, ensure accommodations are re-evaluated.  This is particularly necessary for segregated housing.
  - An inmate taking a class may need to sit up front, or to have an inmate tutor to repeat instructions as useful.

48

# 9. Accommodations for Housing: c) Effective Communication

- Inmates do not know what is available. This needs to be explained to them, and the explanation must be effectively communicated.

# 9. Accommodations for Housing: d) Outcomes

- ADA Coordinator knows where all deaf / hard-of-hearing inmates are housed, and appropriate accommodations are tracked and provided, including in segregated housing.

- Same for education, jobs, etc.

# After the settlement ends?

- The settlement agreement is scheduled to expire at the end of 2020. What happens then?
- The ADA and the ADA Coordinators will both still be in place.
- Self-audit techniques will become even more important, because prison staff will themselves need to *detect*, *analyze*, and *solve* problems.
- The "CReATE Compliance" method is described in the next training slide deck.
- Collaboration among ADA Coordinators is an important tool.
- Assistance and guidance from HQ staff—Branch Manager Debbie Kays and Director of Operations Janet Conover.

51

# Questions?

- If you are wondering what is required, go back and read the Settlement Agreement and the Settlement Monitoring reports.

- Reach out to Margo Schlanger, the Settlement Monitor. [Adams.settlement.monitor@gmail.com](mailto:Adams.settlement.monitor@gmail.com).

# Kentucky Department of Corrections



## ADA Coordinator Training:

## Detecting ADA Issues
## (Oct. 25, 2020)

# Detection Methods

Asking inmates

       – individually

       -- in small groups

       -- surveys

Testing equipment

Checking equipment logs

Annual self-assessments

Tracking of timing on audiology, etc.

Complaints, requests

Grievances

Discipline

# Detection Methods

- Grievances

- Disciplinary reports

- Survey/Interviews

- Requests

- Self-audit

# Detection goals

- Individual problem-solving
- General problem detection

# Grievances: The Irrelevance of Procedural Issues

- Note that grievances often should trigger investigation/response even if they are late or procedurally flawed.  E.g.:
  - Claim made more than 5 days after incident that a hearing aid was lost on transfer from jail.
  - Claim (made more than 5 days after incident) that hearing aids were confiscated on entering into segregation.
- Grievances can fail because of information gaps—but multiple grievances can offer insight into the facts

# Disciplinaries, The Partial Irrelevance of Outcome

- There can be guilty pleas even if there's an underlying problem.

- The outcome itself may indicate a problem (requiring staff training)

# Sample problems from grievances, interviews:

- Inmates report that they are not being given personal notifications—just PA announcements, which they can't hear.
- Inmate grievance that VRI not being used for communication.
- Inmate reports that he's in a cell in the back, right underneath the air conditioner, so having trouble hearing announcements.
- Inmate reports that he was kicked out of SOTP last year because he didn't hear the announcements to go to class.
    - Response: SOTP discharged due to 2 missed classes.  "I/M was educated to the requirements of the program during orientation phase and signed acknowledgment. To date, he has not requested reapplication for the program. "
- Inmate states he was denied a meal for having an altered mask, which he changed to make it easier to also wear hearing aid.
- Inmates report staff are rude when asked to accommodate hearing difficulties.

# Sample problems from discipline:

- Writeup for showing up late to pill call. Inmate told committee that he had trouble hearing the intercom announcement since it's very faint, but was still found guilty.  No discussion of hearing issue

- Writeup for showing up at pill call without being called. Inmate told committee that he went to pill call because he was told it was pill call by an inmate ADA aide. Resolution did not explain why this did not excuse the infraction.

- Inmate pleaded guilty to failure to abide by published schedule or rule. He was paged 3 times and failed to report to the kitchen to assist with assembling sack lunches. He said he was HOH and didn't hear the page. Given a reprimand and a warning.

# Kentucky Department of Corrections



## ADA Coordinator Training:

## CREATE Compliance

## (Oct. 25, 2020)

# There are five steps to every task or problem you encounter as ADA Coordinator:

## C RE A T E

**C**onsider **Re**ady **A**rrange **T**rack **E**valuate Compliance

You may not need to use every step for every problem you come across, but it's important to consider each, every time!

2

# Step One:

**C**onsider  **RE**ady  **A**rrange  **T**rack  **E**valuate

**C**  RE  A  T  E

Compliance

# Step One: Consider

First, **consider** three questions:

- What are the desired outcomes or *goals*?

- What *communications needs* are relevant

- What are the *obstacles* to success?
  - For example, if an area is noisy, hearing aids will be ineffective.

**Example:** An inmate is in a class.

- *Goal*: Equal access to educational services

- *Communications needs*: Ongoing complex oral communication, with many different speakers.

- *Obstacles*: E.g., Background noise in the classroom or other students talking at the same time make hearing aids and assistive listening devices less effective.

4

# Step One: Consider

Remember, communications needs may vary by the inmate:

- Examples:
  - Low literacy or illiteracy makes written communication ineffective.
  - Non-traditional signing makes VRI ineffective.

5

# Step Two:

**C**onsider  **RE**ady  **A**rrange  **T**rack  **E**valuate

C  **RE**  A  T  E
Compliance

6

# Step Two: <span style="color:red">Re</span>ady

Next, **re**ady other staff.

- You must make sure other staff are know how to:
  - Fulfill their obligations under the settlement agreement
  - Access and use technology (such as VRI laptops)
  - Effectively communicate with deaf and hard-of-hearing inmates
- Without this step, it will be difficult or impossible to do your job successfully—almost every problem you will encounter will require the participation of other staff members.
  - But, it is ultimately your responsibility to make sure that other staff members are fulfilling their duties under the Agreement.

# Step Three:

**C**onsider  **RE**ady  **A**rrange  **T**rack  **E**valuate

C   RE   **A**   T   E

Compliance

8

# Step Three: Arrange

Next, **arrange:** prepare in advance so that equipment and processes are in place.

- This step will look different depending on the situation
  - Sometimes, arranging will be the bulk of your obligations
  - Other times, you won't need to do anything for this step (as long as you **readied** other staff effectively in Step Two).
- Example: an inmate who is deaf but cannot sign needs access to a TTY in order to communicate telephonically with family. You will need to **arrange**:
  - Where the TTY goes and how the inmate can get ready access.
  - That the inmate understands how to use the TTY

9

# Step Four:

**C**onsider  **RE**ady  **A**rrange  **T**rack  **E**valuate

C   RE   A   **T**   E
Compliance

10

# Step Four: Track

Then, check in with all the people involved to **track** the progress of everything you **arranged**.

- After checking in to **track** progress, you might have to return to one of the earlier steps:
  - Step One (**Consider**) to re-assess needs and barriers
  - Step Two (**Ready**) to re-train other staff about how to perform their tasks
  - Step Three (**Arrange**) to coordinate more action.

11

# Step Four: Track

- When you are **tracking**, you may discover that something about the situation has changed
  - For example, a deaf or hard-of-hearing inmate has been moved to segregated housing
- Or perhaps an obstacle has appeared or something has stalled:
  - For example, there may be a delay in payment of an audiologist, preventing pickup of a hearing aid.
- In addition, sometimes the Settlement Agreement requires that your formally track and report certain situations. That is also part of this step.

# Step Five:

**C**onsider   **RE**ady   **A**rrange   **T**rack   **E**valuate

C   RE   A   T   **E**
Compliance

# Step Five: Evaluate

Finally, you need to gather accurate feedback and **evaluate** the effectiveness of whatever you just did.

- Feedback might come from routine records (logs, etc.), prison staff, outside providers (interpreters, etc.), or inmates.

14

# Step Five: Evaluate

- You might gather feedback by asking for it at regular intervals.
    - Example: asking an inmate if non-auditory alerts are effective.
- Or, gather feedback by creating a system to get feedback every time a certain event happens.
    - Example: have a form that an inmate fills out evaluating effectiveness of communication after every disciplinary hearing.
- Make sure to gather feedback from every person involved
    - Staff, inmate, outside providers (e.g., interpreters, audiologists)
- Once you obtain feedback, you need to **evaluate** the results—this may then lead you back to one of the first two steps to re-train staff (Step Two: **Ready**) or re-assess needs and barriers (Step One: **Consider**).

15

# Example 1: Non-auditory alerts

- Let's use the example of deaf/hard-of-hearing inmates' need for non-auditory alerts to demonstrate how you can **CREATE** compliance.

16

# Step One: Consider

- **Consider**, for non-auditory alerts
  - What is your desired outcome?
  - What are the communications needs of the inmates?
  - What special obstacles does the situation present?

17

# Step One: Consider

- Goals:
  - Deaf and hard-of-hearing inmates are entitled to communication that is as effective as that provided other inmates.  This includes bells, announcements, and the like.

- Communications Needs:
  - The needs of inmates will vary: deaf inmates and hard-of-hearing inmates have different issues. And the needs of hard-of-hearing inmates are likely to be more acute in the morning, when they are sleeping, so cannot see what others are doing and before they have put on hearing aids.

- Obstacles:
  - Varied housing area layouts, types of alerts, etc.

# Step Two: Ready

- **Readying** staff is crucial to succeed at the task of ensuring effective communication.

- For this step, think of what staff are involved in communication, what they need to know, and what physical tools they need to be successful.

  – What did you come up with?

19

# Step Two: Ready

Housing unit staff conduct alerts—make sure they know:

- What equipment is available to them

- What other techniques (e.g., ADA Aids, personal notification) are available to them

- Who the deaf/HOH inmates are in their units.

- That effective communication is *their* obligation, under both the law and the settlement agreement.

# Step Three: Arrange

Next, **arrange:** prepare in advance so that equipment and processes are in place.

What needs **arranging** for non-auditory alerts?

# Step Three: Arrange

- Have inmates who might benefit from non-auditory alarm clocks or watches been told about them?

- Have arrangements been made—and communicated—to address indigent inmates' needs?

- What is the method used in each housing area? (Light flicker, ADA Aids, etc.)

- (Also consider whether *auditory* alerts are as accessible as possible—amplified, HOH inmates moved to where loudest, etc.)

# Step Four: Track

What would be useful to **track** the progress of everything you **arranged**?

# Step Four: Track

- If housing units vary, keep track of what is being done in each.

- Whether the method chosen is technological or personal notification, track if it's actually being used.

- This step makes sure that everything is happening the way you anticipated in Step One (**Consider**), as you **readied** for and **arranged** in Steps Two and Three

24

# Step Five: Evaluate

How can you best **evaluate** the effectiveness of the non-auditory communication?

- What are good sources of feedback?
  - Inmates
  - Staff
  - Other

25

# Step Five: Evaluate

- Ask housing unit staff what they think is working well; what could be improved.

- Ask inmates what they think is working well; what could be improved.

- Gather information to figure out why any mistakes happened and **evaluate** how you can fix the process.

# Example 2: Initial Screening

- Now, we will use the example of the initial screening for hearing difficulties to demonstrate how you can **CREATE** compliance.

27

# Step One: Consider

- **Consider**, for initial hearing screening of inmates
  - What is your desired outcome?
  - What are the communications needs of the inmates?
  - What special obstacles does the situation present?

# Step One: Consider

- Goals:
  - Medical staff will identify all deaf and hard-of-hearing inmates, offer them immediately necessary auxiliary aids and services (amplifiers, identification cards, alert in computer system), and communicate their presence to the ADA Coordinator.

- Communications Needs:
  - The needs of inmates will vary and there won't be any way to know, for any particular inmate, what they might be. So, you need to be prepared to accommodate every sort of communication need.

- Obstacles:
  - Because inmates won't know about the accommodations available or that he can ask for them, it's crucial at this stage that he is offered all accommodations without having to ask.

29

# Step Two: <span style="color:red">Re</span>ady

- **<span style="color:red">Re</span>adying** staff is crucial to succeed at the task of initially screening all inmates for hearing problems.

- For this step, think of what staff are involved in the initial screening, what they need to know, and what physical tools they need to be successful.

  – What did you come up with?

30

# Step Two: Ready

Medical staff conduct initial screenings—make sure they know:

- To screen all incoming inmates.
- How to obtain and use a VRI laptop.
- Next steps for inmates who are deaf or hard-of-hearing:
  - offer deaf/h-of-h identification cards
  - offer a pocket amplifier (if useful)
  - schedule for additional screening/evaluation/audiology services if appropriate
  - note deaf/hard-of-hearing alert in the EMR
  - report that inmate is deaf/hard-of-hearing to the ADA coordinator

31

# Step Three: Arrange

Next, **arrange:** prepare in advance so that equipment and processes are in place.

What needs **arranging** for initial screening?

# Step Three: Arrange

- Is the VRI laptop available when medical needs it?

- Is there a splitter, to facilitate use of the laptop at the same time as another computer?

- Is internet bandwidth sufficient?

- Etc.

# Step Four: Track

What would be useful to **track** the progress of everything you **arranged**?

# Step Four: Track

- Check in with the medical staff regularly—make sure that the screenings are happening as they are supposed to, that new medical staff are properly trained, and that they can access the technology that they need to access (e.g., amplifiers and VRI laptops).

- This step makes sure that everything is happening the way you anticipated in Step One (**Consider**), as you **readied** for and **arranged** in Steps Two and Three

- Initial screenings have a recordkeeping and reporting component. (This is specified in the Settlement Agreement.)  Add all reported deaf/hard-of-hearing inmates to your **tracking** list and include them in your reports to the settlement monitor.

35

# Step Five: Evaluate

How can you best **evaluate** the effectiveness of the initial screening?

- What are good sources of feedback?
  – Records
  – Staff
  – Other

# Step Five: Evaluate

- Ask medical staff what they think is working well; what could be improved.

- Run a check of the EMR and find all deaf/hard-of-hearing inmates. Are there any you didn't hear about, or didn't hear about promptly? Why not?

- Gather information to figure out why any mistakes happened and **evaluate** how you can fix the process.

# CREATE Compliance:
# Example 2 Summary

- **Consider**: Goals, Needs, Obstacles
  - Medical staff will identify all deaf and hard-of-hearing inmates, offer them immediately necessary auxiliary aids and services (amplifiers, identification cards, alert in computer system), and communicate their presence to the ADA Coordinator.
  - The needs of inmates will vary and there won't be any way to know, for any particular inmate, what they might be. So, you need to be prepared to accommodate every sort of communication need. Make a plan.
  - Because inmates won't know about the accommodations available or that he can ask for them, it's crucial at this stage that they be offered all accommodations without having to ask.

38

# CREATE Compliance:
# Example 2 Summary

- **Ready** medical staff to screen all incoming inmates, to use a VRI laptop, and to take next steps.

- **Arrange**: E.g., is the VRI laptop readily available, appropriately equipped?

- **Track:**
  - Are screenings happening as they should; do new medical staff know the requirements? Are amplifiers and VRI laptops being used as appropriate?
  - Make sure inmate list stays up to date, and provide to settlement monitor.

- **Evaluate:** Check in with medical staff; cross reference with EMR

39

# Example 3: Getting Hearing Aids

- A second example of how you can **CREATE** compliance with the Settlement Agreement: Prompt provision of necessary hearing aids.

# Step One: Consider

- **Consider**, for provision of hearing aids to an inmate who needs them
  - Goals: What is your desired outcome?
  - Needs: What are the communications needs of the inmates?
  - Obstacles: Are there obstacles to success?

41

# Step One: Consider

- Goals:
  - Prompt (within 60 days) provision of necessary hearing aids

- Communications Needs:
  - Need for effective communication at an audiologist

- Obstacles:
  - Difficulties with scheduling, payment, transport.

# Step Two: <span style="color:red">Re</span>ady

- **<span style="color:red">Re</span>adying** staff is, as always, crucial.

- Who is involved in hearing aid provision? What do they need to know?

# Step Two: Ready

**Re**ady staff: Most importantly, train staff on the requirement that getting hearing aids should take no more than two months.

# Step Three: Arrange

Next, **arrange:** prepare in advance so that equipment and processes are in place.

What needs **arranging** for hearing aid provision?

45

# Step Three: Arrange

- Someone needs to come up with an efficient system to schedule prompt audiologist appointments and payment, and arrange all transportation.

- If the inmate is transferred to a new institution at any point during the process, communicate with the new prison so that the process continues without interruption.

# Steps Four & Five: Track & Evaluate

What would be useful to **track and evaluate** the progress of everything you **arranged**?

47

# Steps Four & Five: Track & Evaluate

- The key to hearing aid progress is case management: **tracking** progress, and **evaluating** and solving problems.

- You should maintain a document tracking each inmate's progress through the process of getting a hearing aid. This will be reported to the Settlement Monitor every quarter.

- Check in with medical every week or two to update the document and resolve any procedural hurdles.

# Steps Four & Five: <span style="color:red">T</span>rack & <span style="color:red">E</span>valuate

Suppose after checking in with medical and/or the inmate, you find out that the inmate has missed an audicus testing appointment because he was in administrative segregation. What should you do now?

49

# Step Five: Evaluate

- Re-**Consider**: Was this a problem you anticipated?
  - If yes, why were you unable to prevent it?
  - If no, what caused it and how can it be prevented in the future?

- Re-**Ready**:
  - Re-train staff to resolve the problem.

- Re-**Arrange**:
  - Make sure the appointment is promptly rescheduled and expedited.

# CREATE Compliance:
# Example 3 Summary

- **C**onsider:

Goals, Communications Needs, Obstacles

- Prompt (60 days) provision of hearing aids

- Probably, audiologists can manage the communications needs of inmates.

- Scheduling, payment, transport are all complicated and slow.

51

# CREATE Compliance:
# Example 3 Summary

- **Re**ady medical staff to know about the 60 day goal, and the tracking obligations.

- **A**rrange: A system for audiologist scheduling, payment, etc.

- **T**rack:
  - Make sure tracking sheet stays up to date, and provide to settlement monitor.

- **E**valuate: Use the tracking sheet to evaluate if the system is working, solve problems as they arise.

# Questions?

- If you are wondering what is required, go back and read the Settlement Agreement and the Settlement Monitoring reports.

- Reach out to Margo Schlanger, the Settlement Monitor.
  [Adams.settlement.monitor@gmail.com](mailto:Adams.settlement.monitor@gmail.com).